Petitioner, Ms. Johnston, for responding. Good morning. May it please the Court, my name is David Broderick. I'm here on behalf of Petitioner, H&M Int'l Transportation, Inc. Today, H&M seeks reversal of the ALJ decision which was affirmed by the NLRB that stated that H&M discharged four employees in retaliation for protected concerted activity. I will address three topics in my oral argument today. First, the ALJ leniently applied the Federal Rule of Evidence 901 standard for authentication and admission of an audio recording which prejudiced the company. Second, this entire matter was improperly instituted because General Counsel Leif Solomon of the NLRB lacked the authority to issue the complaint. Finally, even if the subsequently appointed General Counsel ratified the complaint, the ratification process was procedurally defective. As a result, the ALJ's decision was not supported by substantial evidence and should be vacated. With respect to the evidentiary issue... Could I get you to start with your second argument? Yes, sir. If you don't mind, and respond to the Board's argument that we don't have jurisdiction to consider that issue because it wasn't included in your exception. There are two issues with that argument by the Board. The first issue is that the Board's rules and regulations include the answer as part of the record. Right, but the Board points out that its rules require that objections be included in your exceptions. That is true, that there is a rule that states that. And they cite our case, our decision in Parkwood Development, which they cite and you didn't respond to, which says that the Board rules require that it be raised in the exceptions for jurisdictional purposes. There is also Supreme Court precedent as well as D.C. Circuit precedent and Wolke and Romero and Ambersand that say that you can bring objections to the Board in one of two ways. The first is, as Your Honor just said, is through a motion for reconsideration. The cases you cite for a motion for reconsideration, I believe, are cases where the issue arose in the Board's decision itself. So your only way to raise it was in a motion for reconsideration. But in a case like this, where the issue is antecedent to the Board's decision, it has to be raised in an exception. I don't believe that those were at issue in the Board's decision. I believe that they were not raised at all, actually, in those cases. And the Court in both of those cases said, you should have filed it in the exceptions, but in the alternative, you also didn't file it as a motion for reconsideration. So in there, they were stating the proper standard, which we followed here. They do have a regulation which says you have to raise it in the exceptions. I agree that that... So in order for you to prevail, don't we have to strike down that regulation as applied to this case? I think you'd have to read it in concert with the requirement that the answer in which we stated our argument is part of the record, and also the idea of the intervailing case law in Wolke and Romero and in Ambersand, in which the courts have stated that you can also file a motion for reconsideration. You stated this in your answer before... You raised this in your answer before the ALJ? Yes, sir. Not the Board? Correct. And you raised it on rehearing with the Board? Correct, Your Honor. Now, that's a little bit like trying to go to the Supreme Court saying, well, I raised something in district court and I raised it seeking in bank, but I didn't raise it before the Court of Appeals. It just doesn't make any sense. The Board is the decision maker, and you just presented this to some functionary below them, and then you presented it to them after they made their decision. The Board also provides for extraordinary circumstances, and in this case, there was... At that point, this circuit and the Ninth Circuit had ruled on General Counsel Solomon's authority at that time, so we were raising new law to the Board. We have cases suggesting that intervening precedents don't amount to extraordinary circumstances, and in any event, this argument was clear enough to you that you could and did raise it before the ALJ? We did raise it there, and we believe that it was part of the record, so we didn't believe that it was unnecessary to raise again before the Board, and we believe that we appropriately filed the motion for reconsideration to the Board and allowed them to consider it. The other... There's case law, Supreme Court case law, that also states that the purposes of exceptions and objections is to put the Board on notice of potential arguments, and we believe that in filing our answer, we appropriately put the Board on notice of one potential argument. For the Board to argue that they were not on notice is really a misrepresentation, because in the interim, General Counsel Griffin did ratify before the Board decision, so they were certainly on notice both in our answer. Do litigants all the time make arguments to an ALJ and then narrow their case as they go up the chain and make some but not all of those arguments to the Board? Yes. So the fact that you pressed this before the ALJ and then didn't press it before the Board, if anything, suggests exactly the opposite, is that you were giving it up. We weren't giving it up. In fact, we were preserving the argument for a later argument when we did so, and we believe that the precedent allowed us to do so. If I could return to the evidentiary issue. With respect to the evidentiary issue, Rule 901 and its interpreting case law requires a detailed review of an audio recording and its integrity prior to admission. That did not happen here. It said Judge Landau's admission and significant reliance on the audio recording without exploring the necessary factors for authentication is reversible error. The relevant case law in this circuit requires an absence of bad faith and alteration and strict proof about the circumstances in which a recording was made or the chain of custody. However, the Board in this case urged more of a lenient standard in which a participant in the recording could testify as to the voices on the recording and the circumstances by which the recording took place. You're basing your argument on Rule 901, but all that rule says is that authentication requires sufficient evidence to support a finding that the item is what the proponent claims it is. Yes, sir. It's pretty open-ended. It seems to give the trier of fact a lot of discretion. But then the rule goes on to talk about authenticating voices, and it says one sufficient way to do that is you have an opinion identifying a person's voice based on hearing the voice at any time under circumstances that connected it to the alleged speaker. And here you have the two main protagonists, I think Nunnery and Neelan, on both sides of this dispute give testimony that, yeah, that's what was said. And the cases both on the Board side and the circuit side, Your Honor, all have the following elements which I believe are important here. The person who actually recorded the tape was present to testify. That was not present here. The second element is the idea that the other side, meaning our side, the company's side, wouldn't, made no arguments with respect to the integrity of the tape. And we did. This was a 60-minute audio recording, which was admitted to by the Board, and it was altered down to 26 minutes. You argued that portions of the tape were unintelligible, and you argued that portions of the tape weren't transmitted. But there was no dispute that that long block quote that's in the briefs was an accurate transcription of what was said. There were 98 instances where the audio recording was inaudible, and there was also testimony by Mr. Nealon, who was the proponent of the audio recording, that the recording he provided to the Board was 60 minutes long, and the recording that was played at hearing was 26 minutes long. So what our argument was, was not... And there was testimony that all of that other stuff involved a separate disciplinary matter with, I forget if it's Nealon or Nunnery, but the union official of those two. But I think that raises the specter as to the authenticity of the tape. And the problem was, was that we didn't have the recorder, the person who recorded the tape to come in and testify as to why that audio recording was cut down, what else was potentially cut out of that recording. For example, in the portions that were inaudible, we have no idea why they were inaudible, whether he shut the tape off, whether he moved away for a particular reason. And part of the testimony by Mr. Nunnery from the company was that in one section of the audio recording in which it was inaudible, Mr. Nealon telegraphed the idea that these employees were going to engage in an intentional slowdown on the next day. So really, both the alteration of the recording and also the inaudible nature of the recording raise the specter that the judge should have required more into the integrity of the audio recording. As I just indicated, the... A few more times. Yeah. Go ahead. As I indicated, not only was the integrity of the audio recording important, but it ultimately led to credibility findings with respect to the company's witnesses, and those credibility findings formed the basis for the determination that the discriminatees did not engage in an intentional slowdown on the next day. If you were to take the audio recording out of that hearing, the credibility determinations largely go away in an important way. And if those credibility determinations come out, what we're left with is findings by the judge that the discriminatees were, in fact, working slower on the day of the alleged slowdown. And additionally, there are portions of the judge's decision in which she indicates that Mr. Neal, on behalf of the union, was not credible, and that was independent and outside of the audio recording. I see I have three minutes left. I'd like to reserve the remaining time for rebuttal. You may. Thank you. Thank you. Good morning, and may it please the Court. My name is Rebecca Johnston. I'm here on behalf of the National Labor Relations Board. This case is about the unlawful terminations of four long-term employees for engaging in protected and concerted activity. H&M has greatly narrowed the issues on appeal to just two. Neither of these preclude the Court from enforcing the Board's order in full. H&M makes the claim that this complaint is invalid because it was issued during a time when Lafe Solomon was serving in violation of the FEDRA. The Board's position is that this claim is jurisdictionally barred. This Court does not have jurisdiction to hear the claim. Under Section 10E of the National Labor Relations Act, no objection not urged before the Board shall be urged before the Court, absent extraordinary circumstances. H&M has presented no extraordinary circumstances here that would warrant this Court to consider this claim. In argument, H&M poses the Board's procedures as an either-or proposition, that they can either file exceptions or file a motion for reconsideration. That's a misreading of the Board's regulations. Under Rule 102.46b2 and G, a party needs to raise, in its exceptions before the Board, an issue, or it is thereafter waived. The Board's procedure for post-decisional motions, which is 102.48, is for extraordinary circumstances and reserved for instances where, for example, the Board's sua sponte issues ruled on an issue that the parties didn't have a chance to brief. As Judge Cassis pointed out, typically intervening case law is not considered an extraordinary circumstance, and here H&M can't argue that it is. It was aware of this claim. It put it in its answer. And thereafter seemed to have abandoned it. Even if this Court believes that it does have jurisdiction to consider the claim, a properly appointed General Counsel, Richard Griffin, ratified the complaint on February 5, 2016. As this Court points out... Why wasn't the ratification untimely? H&M's argument that the ratification was untimely is premised on a misunderstanding of the Court's statute of limitations in the NLRA. The statute of limitations is from the time of the unfair labor practice to the time for filing a charge. There is no statute of limitations for filing a complaint. So Richard Griffin did have authority to issue the complaint at that time. So their argument just misunderstands the Court's statute of limitations. As this Court pointed out in Southwest General... Sorry, just the mechanics of this. It's the employee who files the charge? It's the charging party. It can be a union, an employee, or an employer. But what's the difference between the charge and the complaint? One of those three individuals files the charge. The NLRA investigates the charge. If it finds that it has merit, then the NLRA issues a complaint. It's a General Counsel, isn't it? It's a General Counsel, or he can delegate his authority to the Regional Director. I want to say something about the audio tape. Sure. There are three reasons that this Court can uphold a decision notwithstanding the judge's admission of the audio recording. A close reading of the opinion shows that the administrative law judge did not rely on the recording in reaching her decision that the H&M's affirmative defense, its proffered reason for firing these employees, was pretextual. She looked at the version of events that H&M claimed, that the employees were traveling 3 to 5 miles per hour, idling, taking 30 minutes to move a car off a train, and she found that that was wholly without merit. She did so by discrediting the company witnesses. She credited current employees' testimony who testified that the reason things were going slower that day was because of crew configuration. She found there was disparate treatment. This train had been released late numerous times and no one had ever been disciplined or discharged. And the company also failed to follow its progressive discipline. So if you look at the opinion, when she discredits their affirmative defense, she does not use the audio recording. Even if this Court were to find that the audio recording were important to the decision, the Board's footnote, number 1, states that it was not prejudicial. Admission was not prejudicial because the judge also relied on testimony from witnesses who had not heard the tape, from nunnery who admitted to making the words that he spoke on the tape. And so the admission of the audio recording was not prejudicial. We ask for enforcement of that. We have no other questions? Thank you. Great, thank you. Mr. Broderick, you preserved, successfully preserved the remits. Thank you, Your Honors. And I'll be brief. I just want to touch upon two issues that the Board counsel raised. The entirety of the, while the judge does state that she relied upon other testimony, the entirety of H&M's defense in this case about the unlawful slowdown stemmed from the audio recording and the credibility determinations made by the judge on the audio recording. That's the first point. On the second point, with respect to the ratification, we do acknowledge that and we submit that there is no issue with respect to the six-month statute of limitations. However, the Board's ability to ratify is not without limit. It must follow its own rules and regulations, even in the face of a valid ratification. And that, and if Your Honors would submit, there are other procedural safeguards in the rules and regulations that were not followed by General Counsel Griffin here. Namely, a complaint that's issued must be issued 14 days before a hearing. That didn't take place here. The hearing had been closed. So while there is no statute of limitations, and we do acknowledge that, the hearing by ALJ Landau had been closed for a year and a half by the time General Counsel Griffin allegedly ratified the decision of General Counsel Solomon. The ratification does not revert back to the original date. It's a new ratification. So if the court buys the argument, what was the appropriate procedural context here is that H&M should have been provided a full complaint and an opportunity for a hearing on the new complaint. So the only thing that survives here is an ALJ decision which is based on an unauthorized complaint from Mr. Solomon. G.C. Griffin never went back to the judge and said, wait, hold on, your decision was based on an unauthorized complaint, so reopen the record and I'm going to send you the ratified complaint. He never did that. So not only did Mr. Griffin never allow H&M the opportunity to respond, he also never followed the appropriate safeguards for ratification. Any further questions from your honors? Thank you. Thanks for your time. Thanks for submitting. Thank you very much.
judges: Tatel, Katsas, Ginsburg